

**FILED**
DISTRICT COURT OF GUAM
SEP - 9 2005
MARY L.M. MORAN
CLERK OF COURT

DISTRICT COURT OF GUAM
TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br>vs.<br>JOSEPH F. DRAKE,<br>    Defendant. | CR No. 05-00050<br><br>ORDER RE DIGITAL VIDEO SURVEILLANCE |

The Court is in receipt of Defendant Joseph Drake's ("Defendant") Motion to Dismiss the Indictment for Loss of Evidence, or in the Alternative, to Suppress all Evidence Including Testimony Pertaining to a Surveillance Video. A hearing was held on September 8, 2005. Having thoroughly considered the documents and arguments presented, the Court DENIES the motion.

I. <u>BACKGROUND</u>

On September 14, 2003, at approximately 2:50 a.m., a male suspect entered the Sinajana, Guam Mobil Mart, and at gun point, robbed the cashier, Angel Guzman, and the gas station attendant of approximately $ 85.00 before fleeing the scene. Nakamura Report at 2. Upon Guzman's report of the robbery, the police arrived approximately twenty minutes later, and interviewed the gas station employees. *Id.* At the interview, Guzman provided Officer Nakamura detailed description of the suspect. Later that day, at approximately 7:15 a.m., Guzman also provided a written statement describing the

suspect in detail. Guzman Statement at 3.

In furtherance of his investigation, on September 14, 2003, at approximately 4:02 a.m., Officer Nakamura met with Ariel Gutierrez, the Mobil Mart manager. Mot. at 2-3; Opp'n at 2. Officer Nakamura viewed digital surveillance video with the aid of Gutierrez. *Id.* at 3. The video was also observed by Officer Jason Michael Dodd. Opp'n at 2.[1] When Officer Nakamura asked for a copy of the video, Gutierrez was unable to produce it, so he offered to provide Officer Nakamura a copy at a later time. *Id.* Officer Nakamura never received a copy of the surveillance video, but later that day, he did receive a floppy disk containing fourteen (14) still images from the surveillance camera, depicting the robbery in commission. *Id.* The parties do not dispute that the Mobil surveillance apparatus does not produce a video tape, but produces digital record and saves it for thirty (30) days, after which the digital record is automatically erased. Mot. at 3-4; Opp'n at 2. The officers did not take the surveillance system into custody, and the video record of the robbery was lost. Mot. at 4; Opp'n at 2.

Defendant claims that he was unaware that there was, at one time, a surveillance video footage beyond the fourteen still images, or that the video would be lost within thirty days of its capture. (*Id.*)

The Defendant now argues that the video from the surveillance camera is of exculpatory value to the Defendant, and the failure of the Guam Police Department to preserve evidence material to the case requires the Court to dismiss the indictment, or at a minimum, to suppress any evidence relating to the video surveillance.

II. LEGAL STANDARD

The Supreme Court has established that the suppression of exculpatory evidence violates due process. *Brady v. Md.,* 373 U.S. 83, 87 (1963) (The suppression of requested evidence favorable to an accused violates due process where the evidence is

---

[1] On June 1, 2004, before the Superior Court Grand Jury, Officer Dodd testified that Agent Lizama also reviewed the surveillance footage on the Sinajana Mobil system "several times." Mot. at 4.

2

material either to guilt or to punishment). In cases subsequent to *Brady,* the Court provided further guidelines for situations where the government loses or destroys potentially exculpatory evidence.

To rise to the level of due process violation: (1) the evidence lost by the government must possess an exculpatory value that was apparent before the evidence was lost; (2) the evidence lost must be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means; and (3) the government's failure to preserve potentially exculpatory evidence must be in bad faith. *U.S. v. Barton,* 995 F.2d 931, 934 (1993) (citing *Ariz. v. Youngblood,* 488 U.S. 51, 58 (1988); *Cal. v. Trombetta,* 467 U.S. 479, 489 (1984)). See also, *U.S. v. Agurs,* 427 U.S. 97 at 109-110 (1976).

III. DISCUSSION

A. Exculpatory Value

Defendant argues that the video surveillance footage of the robbery possesses exculpatory value as it pertains directly to the question of the Defendant's guilt or innocence and supports his claim that the person committing the robbery was not the Defendant. Mot. at 8-9.

In *Brady* and its progeny, the Supreme Court distinguished "potentially useful evidence" from materials of exculpatory value. *Ill. v. Fisher,* 540 U.S. 544, 548 (2004) (citing *Youngblood,* 488 U.S. 51; *Brady,* 373 U.S. 83; *U.S. v. Agurs,* 427 U.S. 97, 109-110 (1976)). In *Brady,* after the defendant was convicted of murder and sentenced to death, he learned that the government withheld a statement of confession by another individual admitting to the homicide at issue. 373 U.S. at 84. The Court held that suppression of the confession was a violation of the Due Process Clause of the Fourteenth Amendment. *Id.* at 86.

In contrast, the Court in *Youngblood,* a case of child molestation, sexual assault and kidnaping, held that the possibility that the semen samples, if preserved or tested, *could have* exculpated the defendant was not enough to meet the constitutional

3

materiality standard. 488 U.S. at 56.

Similarly, in *Trombetta*, the Court held that where the State had failed to preserve the result of breath sample test in a drunken driving prosecution, the chances that preserved samples *would have* exculpated the defendant were slim, and denied the defendant's motion to suppress the test results. 467 U.S. at 489.

Here, there is a dispute as to whether the lost video would be more incriminating than exculpatory. Mot at 9; Opp'n at 3. The Court finds the instant case more comparable to *Youngblood* and *Trombetta* than *Brady*.

Unlike the case in *Brady*, the level of the Defendant's culpability is not sure to be reduced to lesser degree with the introduction of the video footage. Rather, the video in this case is more like the semen samples in *Youngblood*, where the identity of the defendant was at issue and the evidence, if preserved, could be used to support the defendant's claim of misidentification. 488 U.S. at 54. As in *Youngblood*, whether the video could have exonerated Defendant or revealed him as the perpetrator is unclear and open to debate.

Based on the foregoing, the Court finds that the lost video from the surveillance system, although potentially useful, does not meet the materiality standard required to find a due process violation.

B. <u>Defendant's Ability to Obtain Comparable Evidence</u>

The video footage is permanently lost as the surveillance system automatically erases the images after thirty days of having been recorded. Mot. at 3-4, 9; Opp'n at 2. However, Officer Nakamura was able to salvage fourteen still images from the system, depicting the commission of the robbery. Mot. at 3; Nakamura Supp. Report at 2. Further, portions of the video were observed by Officer Dodd. Opp'n at 2. Officer Nakamura also submits that he viewed portions of the video with the aid of Ariel Gutierrez. Nakamura Report at 10.

Upon loss of the actual evidence, the testimony of the people who viewed the material would be acceptable form of evidence at a trial. Fed. R. Evid. 1004 (2).

4

Moreover, Guzman, the cashier, who was present at the time of the robbery, has provided a description of the perpetrator immediately after the robbery, and may still be available as witnesses at a trial. Nakamura Report at 4, Guzman Statement at 3. The identity of Defendant may be proved or disproved in ways other than the actual presence of the video images. For all these reasons, the Court concludes that Defendant is not completely deprived of potentially exculpatory evidence.

### C. Government's Bad Faith

"The presence or absence of bad faith turns on the government's knowledge of the apparent exculpatory value of the evidence at the time it was lost or destroyed." *Youngblood,* 488 U.S. at 56; *U.S. v. Cooper,* 983 F.2d 928, 931 (9th Cir. 1993). Thus, a negligent destruction of evidence does not violate due process. *U.S. v. Barton,* 995 F.2d 931, 936 (9th Cir. 1993) (citing *Youngblood,* 488 U.S. at 58).

Here, the police never seized the video surveillance system from the gas station, and the lost video footage was never in its custody. (Mot. at 4.) Instead, Officer Nakamura was assured by the store manager that he would receive a copy of the video at later time. (*Id.* at 3.) The failure of Officers Nakamura and Dodd to follow up with the gas station when they did not receive a video copy shortly after the robbery amounts to no more than mere negligence. Further, there is no evidence that the officers believed that the video possessed exculpatory value at the time they viewed the video and any time before its loss. Absent the government's bad faith conduct, the Court finds that reference to the lost video footage would not violate Defendant's constitutional right to due process.

///
///
///
///
///
///

## IV. CONCLUSION

For the reasons stated above, the Court finds that introduction of evidence pertaining to the lost video footage would not violate Defendant's due process. Therefore, Defendant's Motion to Dismiss, Alternatively to Suppress all Evidence Including Testimony pertaining to Digital Video Surveillance is DENIED.

IT IS SO ORDERED.

Dated this 9th day of September, 2005.

_____
District Judge S. James Otero
United States District Judge

---

*The Honorable S. James Otero, United States District Judge for the Central District of California, by designation.